Eric A. Liepins
ERIC A. LIEPINS, P.C.
12770 Coit Road
Suite 850
Dallas, Texas 75251
(972) 991-5591
(972) 991-5788 - telecopier

ATTORNEYS FOR DEBTOR

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| SNIPER SERVICES, LLC | § | Case No. 22-41502-11 |
|     DEBTOR | § | |

### AMENDED PLAN OF REORGANIZATION OF SNIPER SERVICES, LLC DATED DECEMBER 19, 2022

**TO:   ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

COME NOW, Sniper Services, LLC, Debtor and Debtor-in-Possession in the above-referenced bankruptcy case, and proposes the following Amended Plan of Reorganization ("Plan"). The Plan proposes segregation of the Creditors and Equity Interest Holders of the Debtor into 7 separate classes.

### ARTICLE I
**DEFINITIONS**

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan and in the accompanying Disclosure Statement, which meaning shall be equally applicable to both the singular and plural forms of such terms. Any term in this Plan that is not defined herein but that is used in title 11, United States Code ("Code") shall have the meaning assigned to such term in the Code.

1.    "**Administrative Claim**" shall mean those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

2. "**Allowed Claim**" as to all Classes, hereinafter specified, shall mean a Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code. When "Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

3. "**Allowed Secured Claim**" shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

4. "**Allowed Unsecured Claim**" shall mean an unsecured Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

5. "**Bar Date**" shall mean the date fixed by the Court as the last date for filing all Claims in this case other than Administrative and Priority Claims or Rejection Claims.

6. "**Case**" shall mean this Chapter 11 case.

7. "**Claim**" shall mean any right to payment from the Debtor as of the date of entry of the Order Confirming Plan whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off. Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

8. "**Claimant**" shall mean the holder of a Claim.

9. "**Class**" shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

10. "**Code**" shall mean the United States Bankruptcy Code, being title 11 of the United States Code, as enacted in 1978 and thereafter amended.

11. "**Confirmation**" or "**Confirmation of this Plan**" shall mean entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

12. "**Confirmation Date**" shall mean the date on which the Court enters an Order confirming this Plan.

13. "**Court**" shall mean the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, presiding over this Chapter 11 reorganization case, or any successor court of competent jurisdiction.

14. "**Creditor**" shall mean any person having a Claim against Debtor.

15. "**Debt**" shall mean any obligation of Debtor, alone, and any obligation of Debtor and any other Person, to any Entity.

16. "**Debtor**" shall mean Sniper Services, LLC.

17. "**Disbursing Agent**" shall mean the Reorganized Debtor.

18. "**Effective Date**" shall mean thirty days after the Final Confirmation Date.

19. "**Entity**" shall include Person, estate trust, governmental unit and the United States Trustee.

20. "**Equity Interest Holders**" shall mean holders of the equity interests in the Debtors.

21. "**Final Confirmation Date**" shall mean that date which is fourteen (14) days following the entry of the Order Confirming Plan, during which period of time no Notice of Appeal is filed, or if a Notice of Appeal is filed, during which period of time no Motion for Stay Pending Appeal is granted or supersedeas bond is approved and filed.

22. "**Order Confirming Plan**" shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation under Chapter 11 of the Code.

23. "**Petition Date**" shall mean the date on which the Debtor filed this proceeding, July 4, 2022.

24. "**Plan**" shall mean this Plan of Reorganization in its present form or as it may be amended, modified or supplemented.

25. "**Priority Claim**" shall mean any Claim entitled to priority pursuant to Section 507(a)

of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

26.     "**Rejection Claim**" shall mean any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

27.     "**Reorganized Debtor**" shall mean the entity which shall assume title to and control of the Debtors' assets and liabilities upon confirmation as provided herein.

28.     "**Secured Claim**" shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby.  That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

29.     "**Substantial Consummation**" shall occur upon Reorganized Debtor's commencement of payments to creditors as provided in this Plan.

30.     "**Tax Claims**" shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtor under this Plan.

31.     "**Unsecured Claim**" shall mean any Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

## ARTICLE 2
## CERTAIN GENERAL TERMS AND CONDITIONS

The following general terms and conditions apply to this Plan:

2.1     **Claims and Debts**:  Various types of Claims and Debts are defined in this Plan.  This Plan is intended to deal with all Claims and Debts against the Debtor of whatever character whether or not contingent or liquidated and whether or not allowed by the Court pursuant to Section 502(a) of the Code and all Claims and Debts will receive the treatment afforded in Articles of this Plan.  Claims and Debts incurred by the Debtor post-petition, including ad valorem taxes, in the ordinary course of business will be paid by the Debtor according to their terms as they come due.

2.2     **Securities Laws**:  The issuance of any security in satisfaction of indebtedness under this Plan may be exempt from registration under certain State and Federal securities laws by virtue of Section 1145 of the Code and the exemption therein contained.

2.3     **Time for Filing Claims**:  With respect to those Claims that have been identified in the Schedules filed pursuant to Section 521(1) of the Code and which have been scheduled as "disputed," "contingent," or "unliquidated," said Claimants <u>must</u> file a proof of claim bearing the

case number of the above-styled and referenced proceeding with the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, on or before the Bar Date to participate under this Plan. Claims scheduled as disputed, contingent, or unliquidated filed after the Bar Date shall not be allowed, and shall not participate in the distributions contemplated by this Plan. Claims arising from rejection of a lease or executory contract and administrative claims shall be filed with the Court within thirty (30) days following the Confirmation Date of this Plan.

2.4 **Modifications to Plan**: In accordance with Bankruptcy Rule 3019, to the extent applicable, this Plan may be modified upon application of Debtor or corrected prior to Confirmation without notice and hearing and without additional disclosure pursuant to Section 1125 of the Code provided that, after hearing on and notice to the creditors, the Court finds that such modification does not materially or adversely affect any Creditor or Class of Creditor.

## ARTICLE 3
## TREATMENT OF UNCLASSIFIED CLAIMS
## (CERTAIN ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS)

3.1 All trade and service debts and obligations, including ad valorem taxes for year 2021, incurred in the normal course of business by the Debtor on or after the Petition Date will be paid when due in the ordinary course of the Debtor's business unless a different time for payment is specified in this Plan.

3.2 Each governmental unit holding a post-petition Claim arising out of taxes assessed against property of the estate, also including "ad valorem property taxes," but limited as provided by Section 502(b)(3) of the Code, shall be paid in full when said Claims are due.

## ARTICLE 4
## DIVISION OF CREDITORS INTO CLASSES

4.1 Classification of Claims: This Classification of Claims is made for purposes of voting on this Plan, making distributions thereunder, and for ease of administration thereof. Unless specifically provided otherwise herein, on the Confirmation Date this Plan discharges and extinguishes all Claims and Debts against the Debtor of whatever character, whether allowed by the Court or otherwise.

4.2 **Class 1**: Consists of **Allowed Administrative Claims Attorney fees and US Trustee Fees (**Not Impaired)
**Class 2**: Consists of **Allowed Claims of the Internal Revenue Service** (Impaired)
**Class 3**: Consists of **Allowed Claims of the Comptroller of Public Accounts** ("Impaired")
**Class 4**: Consists of **Ford Motor Credit Company** (Impaired)
**Class 5**: Consists of **Allowed Claims of John Deere** ("Impaired")
**Class 6:** Consists of **Allowed Claims Unsecured Claims** ("Impaired")
**Class 7:** Consists of **Allowed Equity Holders** (Not impaired)

# ARTICLE 5
# TREATMENT OF CLASSES

5.1 **Satisfaction of Claims and Debts**: The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Article of this Plan shall be in full settlement, release and discharge of their respective Claims, Debts, or interests as against the Debtor subject to the provisions herein. On the Confirmation Date, the Reorganized Debtor shall assume all duties, responsibilities and obligations for the implementation of this Plan.

5.2 **Class 1 Claimants (Allowed Administrative Claims of Professionals and US Trustee)** are unimpaired and will be paid in cash and in full on the Effective Date of this Plan. Professional fees are subject to approval by the Court as reasonable. Debtor's attorney's fees approved by the Court and payable to the law firm of Eric Liepins, P.C. will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. This case will not be closed until all allowed Administrative Claims are paid in full. Class 1 Creditor Allowed Claims are estimated as of the date of the filing of this Plan to not exceed the amount of $15,000 including Section 1930 fees. Section 1930 fees shall be paid in full prior to the Effective Date. The Debtor is required to continue to make quarterly payments to the U.S. Trustee and may be required to file post-confirmation operating reports until this case is closed.

The Class 1 Claimants are not impaired under this Plan.

5.3 **Class 2 Claimants (Allowed Internal Revenue Service Claims)** are impaired and shall be satisfied as follows: The Allowed Amount of Allowed Internal Revenue Service Claims shall be paid out of the revenue from the continued operations of the business. The Internal Revenue Service (IRS) has filed a priority Proof of Claim in the amount of $214,255.34. This claim results almost entirely from unfiled 940 and 941 returns. The Debtor has filed all missing returns and believes the amount owed to the IRS on its priority claim should be $113,960. The amount owing the IRS on its Allowed Priority Claim it will be paid in full over a 60 month period from the Petition Date, commencing on the Effective Date, with interest at the greater of 3% per annum or the rate required by Section 511 of the Bankruptcy Code.

Failure of the Debtor to meet the payment obligations set forth in the Plan shall constitute an event of default under the Plan. In addition, upon a default under the Plan, the administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of a Federal (or state) tax lien and the powers of levy, seizure, and sale under the Internal Revenue Code. The below stated provisions apply to the IRS:

(a) If the Debtor or its successor in interest fails to make any Plan payments, and deposits of any currently accruing employment or sales tax liability, fails to make payment of any tax to the Internal Revenue Service within 10 days of the due date of such deposit or payment, or if the debtor or its successor in interest fails to file any required federal or state tax return by the due date of such return, then the United States may declare that the Debtor in default of the Plan. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the successor in interest or Debtor is in default.

(b) If the United States declares the debtor or the successor in interest to be in default of the Debtor's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, shall become due and payable immediately upon written demand to the Debtor or the successor in interest.

(c) If full payment is not made within 14 days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The IRS shall only be required to send two notices of default and upon the third event of default, the IRS may proceed to collect on all accounts owed without recourse to the Bankruptcy Court and without further notice to the Debtor.

(d) The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan.

(e) All payment will be sent to: Chastina McMillion/ IRS, 1100 Commerce Street, Mail Code 5027 DAL, Dallas, Texas 75242

The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtor to the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtor to the Internal Revenue Service; but the Internal Revenue Service shall not take action to actually collect from such persons unless and until there is a default under the plan, and as set forth in paragraph (4)(a)-(d) above.

The Class 2 claimant is impaired under this Plan.

5.4 **Class 3 Claimant (Texas Comptroller claims)** are impaired and shall be satisfied as follows: the Texas Comptroller has filed a Proof of Claim asserting priority tax claim in amount of $25,019.81[1] for Sales and Use Tax. Debtor shall pay the priority amounts in the Comptroller's Proof of Claim in full in equal monthly payments with interest at the rate of 4.75% per annum within 60 months of the Petition Date, commencing on the Effective Date..

Notwithstanding anything to the contrary in the Plan or this Order, as to the Texas Comptroller of Public Accounts and the Texas Workforce Commission (collectively the "**State of Texas**"), nothing in the Plan or this Order shall: (1) affect or impair any setoff or recoupment rights of the State of Texas under applicable bankruptcy and nonbankruptcy law and all such rights are preserved; (2) affect or impair any rights of the State of Texas to pursue any non-debtor third parties for tax debts or claims; (3) be construed to preclude the payment of interest and/or penalties, if any, on the State of Texas' administrative expense claim(s); (4) modify, to the extent that interest is payable as to any claim of the State of Texas, the statutory interest rate under applicable nonbankruptcy law; (5) impose, in relation to administrative expense claims of the State of Texas, a requirement to file a motion or application for payment as a condition of its allowance or to receive payment for such claims and such claims are allowed upon filing, subject to an objection; (6) confer exclusive jurisdiction upon the Bankruptcy Court; and (7) be construed as a compromise or settlement of any liability, claim, cause of action, suit, right, or interest of the State of Texas.

---

[1] The Comptroller's total Proof of Claim was for $30,060.93 the unsecured portion of the claim will be treated as a Class 6 creditor.

Notwithstanding anything to the contrary in the Plan or this Order, a failure by the Debtor to timely make a plan payment, timely file a tax return post-confirmation, or timely pay taxes post-confirmation to the State of Texas shall constitute an Event of Default. If the Debtor fails to cure an Event of Default and provide proof of the cure to the State of Texas within ten (10) days after service of a written notice of default to the Debtor and the Debtor's attorney of record, then the State of Texas may: (a) enforce the entire amount of its claim(s); (b) exercise any and all rights and remedies available under applicable non-bankruptcy law; and (c) seek such relief as may be appropriate in this Court. Written notice of default may be sent via email to CHassell70@gmail.com and eric@ealpc.com or as otherwise agreed to in writing. The Debtor has the right and the opportunity to cure two notices of default, however, the third Event of Default may not be cured and the State of Texas may accelerate its claim(s) and declare the outstanding amount to be immediately due and pursue any and all rights and remedies available under applicable non-bankruptcy law.

Class 3 Claimants are impaired under this Plan.

5.5 **Class 4 Claimant (Allowed Secured Claim of Ford Motor Credit Company**) is impaired and shall be satisfied as follows: On or about January 22, 2020, Debtor executed that certain Texas Motor Vehicle Retail Installment Contract ("Contract") in favor of Sam Pack's Ford Country of Lewisville[2] ("Ford") for the purchase of that certain 2014 F-150 VIN 1FTFX1CFXEKF77853 ("Vehicle"). Ford has filed a Proof of Claim in the amount of $8,830.55 ("Ford Secured Claim). Debtor shall pay the Ford Secured Claim in 36 equal monthly installments with interest at the rate of 8% per annum commencing on the Effective Date. Ford shall retain its lien on the Vehicle until paid in full in accordance with the terms of this Plan.

Notwithstanding anything in the Plan to the Contrary, If Debtor fails to make any payment required pursuant to the terms of the Chapter 11 Plan, Ford shall send a written notification, via first class mail, postage pre-paid, to Debtor of the failure to make the payment. Debtor shall have ten (10) days from the date the written notification is sent to cure the arrearage in full. Failure to cure the arrearage in full is an event of default. Debtor's counsel shall also be sent a copy of that written notification by first class mail, postage pre-paid. Debtor shall be entitled to two written notifications. After two written notifications are sent, failure of Debtor to timely make any payment to Ford pursuant to the Chapter 11 Plan on or before ten (10) days from the date said payment is due is an event of default pursuant to the terms of this Plan. Upon default by the Debtor, Ford shall be entitled to exercise its state law remedies with regard to its claim. The Contract between Debtor and Ford shall otherwise control unless changed by a specific provision of the Chapter 11 Plan.

---

[2] Upon information and belief Sam Pack's Ford Country of Lewisville assigned its rights under the Contract to Ford Motor Credit Company ("Ford").

The Class 4 creditor is impaired under this Plan.

5.6 **Class 5 Claimant (Allowed Secured Claim of Deere & Company dba John Deere Financial)** is impaired and shall be satisfied as follows: On or about July 30, 2019 Debtor executed that certain Retail Installment Contract- Security Agreement ("Contract") with John Deere Financial ("Deere") for the purchase of certain equipment more full described in the Contract ("Collateral"). Deere has perfected its lien on the Collateral. Deere has filed a Proof of Claim in the amount of $66,073.89. ("Deere Secured Claim"). On or about Jul 23, 2022, the Court entered its Agreed Order Modifying Automatic Stay ("Agreed Order") [Docket #15]. Pursuant to the terms of the Agreed Order the Debtor has been paying Deere $1,486 per month since July 2022. The Deere Secured Claim less all payments received post-petition shall be paid in full over 48 months commencing on the Effective Date with 5% interest. Deere shall retain its lien position on the Collateral until paid in full in accordance with the terms of this Plan.

The Class 5 Claimant is impaired under this Plan

5.7 **Class 6 Claimants (Allowed Unsecured Creditors Claims)** are impaired and shall be satisfied as follows. All creditors holding allowed unsecured claims will be paid from the income of the business . The Class 5 Creditors shall receive their pro rata share of 60 monthly payments of $500 commencing on the Effective Date until all Allowed Unsecured Creditors have been paid in full. The unsecured creditors shall receive 100% of their allowed claims under this Plan. The Class 6 creditor shall receive interest on their Allowed Claim at the rate of 7.5% per annum. The Debtor may pre-pay any Class 6 Allowed Claim without penalty.

The Class 6 Creditors are impaired under this Plan.

5.8 **Class 7 Claimants (Current Ownership**) is not impaired under the Plan and shall be satisfied by retaining his interest in the Debtor. Ownership shall remain 100% in the Debtor.
The Class 7 Claimant is not impaired by the Plan.

### ARTICLE 6
### MEANS FOR EXECUTION OF THE PLAN

6.1 **Action to be taken:** Any actions required to be taken by the Debtor on the Effective Date may be taken by the Debtor before the Effective Date or immediately following the date of Final Confirmation.

6.2 **Ongoing Operations:** The Debtor's obligations under this Plan will be satisfied out of the ongoing operations of the Reorganized Debtor. The income projections of the Reorganized Debtor are attached to the Disclosure Statement. The Debtor believes the projections to be accurate based upon current business operations. The Debtor does not intend to dramatically alter the current expenses or income over the Plan term.

      6.3    Notwithstanding anything contained herein, the Reorganized Debtor shall have the right to request the Court to disallow any claim of any Entity from which property is recoverable under Sections 542, 543, 550, and 553 of title 11, or that is a transferee of a transfer avoidable under Sections 544, 545, 548, or 549 of title 11 unless such Entity or transferee has paid the amount, or turned over any such property, for which such Entity or transferee is liable.

### ARTICLE 7
### SECTION 1129(b)(2)

      7.1    The Court may confirm this Plan even though less than all of the Classes of Claims and interests accept it. The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code. Accordingly, Debtor, as the plan proponent, requests the Court to determine that this Plan does not discriminate unfairly, and is fair and equitable with respect to the rejecting creditor.

### ARTICLE 8
### STATUS OF EXECUTORY CONTRACTS

      8.1    All unexpired leases and executory contracts shall be assumed on or before the Effective Date. To the extent there are any unexpired leases or executory contracts, which have not been assumed or dealt with in this Plan prior to the Effective Date, they are rejected. To the extent the agreement with Sewaf is an executory contract it is specifically rejected by this Plan.

### ARTICLE 9
### EVENTS OF DEFAULT AND EFFECT THEREOF

      9.1    In the event that Substantial Consummation of this Plan does not occur on or before the earlier of the Effective Date or 71 days after the Confirmation Date, the Order of Confirmation may be vacated by any party in interest, other than the Debtor.

      9.2    Unless expressly provided herein to the contrary, no Claimant shall have the right to enforce any rights under this Plan until the Reorganized Debtor fails to cure any default hereunder within thirty (30) days of receipt of written notice of such default to Reorganized Debtor

      9.3.    Default shall occur if one scheduled Plan payment is not made by Debtor or if current taxes are not timely paid pursuant to state law. In the event of default, any party in interest who has not received their required payment, shall send written notice of default as set forth in section 9.2 above. Any notice of default sent by ad valorem taxing authorities, under the Plan may be sent to Chad Hassell at CHassell70@gmail.com. In the event the default of payment to the ad valorem taxing authorities is not cured within fourteen (14) days of the date of the facsimile, ad valorem taxing authorities may proceed to collect all amounts owed pursuant to state law outside of the Bankruptcy Court. The ad valorem taxing authorities shall not be required to give more than two notices of default. Upon the third event of default, the ad valorem taxing authorities shall be able to collect all amounts pursuant to state law outside of the

Bankruptcy Court. Notwithstanding anything in this Plan to the contrary, the Bankruptcy Court shall not retain jurisdiction with respect to any tax claims except for (i) resolving the amount of any such tax claim arising prior to confirmation, and (ii) enforcing the discharge provision of the Plan.

# ARTICLE 10
# DISCHARGE

10.1    Upon Confirmation, to the extent that a Claim or Debt has not been dealt with under this Plan, such Claim or Debt will be released.

10.2    The automatic stay imposed by Section 362 of the Code or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date.

# ARTICLE 11
# AMENDMENTS TO THE PLAN

11.1    Debtor may modify this Plan following Confirmation and before Substantial Consummation to the extent consistent with the requirements of section 1122 and 1123 of Title 11. The Plan as modified becomes the Plan if circumstances warrant modification and the Court approves of such modifications.

11.2    In the event of modification of this Plan pursuant to Section 11.1, any holder of a Claim or interest that has accepted or rejected this Plan is deemed to have accepted or rejected, as the case may be, the Plan as modified, unless, within ten (10) days of service of the Plan modifications upon such holder, such holder changes its previous acceptance or rejection.

# ARTICLE 12
# EFFECT OF CONFIRMATION

12.1    The provisions of this Plan bind Debtor, any Entity issuing securities under this Plan, any Entity acquiring property under this Plan, and any Creditor or Equity Interest Holder, whether or not the Claim or interest of such Creditor or Equity Interest Holder is impaired under the Plan and whether or not such Creditor or Equity Interest Holder has accepted this Plan.

12.2    All property of the estate shall vest in the Reorganized Debtor upon Final Confirmation.

12.3    All property of the Reorganized Debtor is free and clear of all Claims and interests of Creditors and Equity Interest Holders, except as to claims, secured claims or secured debentures and interests specifically granted in this Plan.

12.4    All Debts that arose before the Confirmation Date and any Debt of a kind

specified in Section 502(g), 502(h) or 502(i) of the Code, whether or not a proof of claim based on such Debt is filed or deemed filed under Section 501, whether or not such Claim is allowed under Section 502; and whether or not the holder of such Claim has accepted this Plan; are, fully and finally satisfied by this Plan.

## ARTICLE 13
## MISCELLANEOUS PROVISIONS

13.1    The obligations under this Plan to any particular Claim are governed by the laws of the State constituting the situs of the Debt represented by that particular Claim described in this Plan.

13.2    Equity Interest Holders are relieved from all liability, obligation or duty to initiate or pursue any causes of action of Debtor against any Entity.

13.3    Any caption herein is for convenience only and does not affect the construction of the Plan.

13.4    Any distribution pursuant to this Plan which remains unclaimed for a period of six (6) months from the due date of such distribution is forfeited.

## ARTICLE 14
## RETENTION OF JURISDICTION

Until this case is closed, the Court retains jurisdiction of the following matters only:

14.1    To direct any necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a Transfer of property dealt with by the Plan and to perform any other act, including the satisfaction of any Lien, that is necessary for the consummation of this Plan.

14.2    To allow or disallow Claims.

14.3    To hear and determine all Claims arising from the rejection of executory contracts and unexpired leases which are included in Debtor's estate and to consummate rejection and termination thereof in connection with Debtor's estate and/or implementation of the Plan.

14.4    To liquidate damages or estimate Claims in connection with any disputed, contingent or unliquidated Claims.

14.5    To adjudicate all Claims to an ownership interest in any property of Debtor's estate.

14.6    To recover all assets and properties, including by lawsuit, of Debtor's estate wherever located.

14.7    To hear and determine Claims concerning Federal, State and local taxes pursuant to Section 346, 505, 525 and 1146 of the Code.

14.8    To hear and determine any action or proceeding brought by Debtor or the Reorganized Debtor under Section 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Code, whether such action or proceeding is brought before or after the Effective Date.

14.9    To hear and determine any core proceeding, whether such proceeding is brought before or after the Effective Date.

14.10   To determine the validity, extent and priority of all Liens and security interests against property of Debtor's estate.

14.11   To consider any modification of this Plan under Section 1127 of the Code or under Bankruptcy Rule 3020 and/or modification of this Plan after Substantial Consummation as defined herein.

14.12   To hear and determine all requests for compensation and/or reimbursement of expenses of professionals.

14.13   To hear and determine Reorganized Debtor's requests for orders as are consistent with this Plan as may be necessary or desirable to carry out the provisions thereof.

14.14   To enter an order closing this case. The Debtor shall attempt to close the case within 6 months of the Effective Date.

Respectfully submitted,

Sniper Services, LLC

  /s/ Chad Hassell
By: Chad Hassell
Its: Managing Member

ERIC LIEPINS, P.C.
ERIC LIEPINS
12770 Coit Road
Suite 850
Dallas, Texas 75251
(972)991-5591
(972) 991-5788 - telecopier